UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WILLIAM A. RUSHWORTH, SR., Individually and in his capacity as Administrator of the Estate of TODD BRIAN RUSHWORTH | : | |
| VS. | : | C.A. NO. 06-364T |
| MANITOWOC ENGINEERING CO. THE MANITOWOC COMPANY, INC. | : | |

**PLAINTIFF'S ANSWERS TO DEFENDANT'S INTERROGATORIES**

Interrogatory No. 1:

a. State your full name, home address, occupation, business address, date of birth, Social Security number and marital status;

b. Please identify the decedent with his full name, home address, business address, employer at the time of his death by name, address and description of business in which plaintiff's decedent's employer was engaged at the time of the plaintiff's decedent's death, the plaintiff's decedent's date of birth, Social Security number, the identification of all beneficiaries of the estate and next of kin of the plaintiff's decedent, by name, date of birth, address, occupation, and business address, and please particularize exactly what loss each such person suffered as a result of Mr. Rushworth's accident and death as alleged in plaintiff's complaint.

**Answer**: (a) William A. Rushworth; 65 Shore Drive, Johnston, RI 02919; Employment: Metals Recycling, Maintenance Department, 89 Ceila Street, Johnston, RI 02919; d/o/b: November 16, 1930; Social Security Number withheld per privilege; widower.

(b) Todd Brian Rushworth; 3 Laurel Drive, Glocester, RI; at the time of his death employed by Metals Recycling; 89 Celia Street, Johnston, RI 02919; said company was a recycling plant; Todd Rushworth's date of birth: July 12, 1961. Todd was not married and had no children. In addition to myself, Todd was survived by his mother, who has since deceased; his brothers, James Roland Rushworth; address: 3 Laurel Drive, Glocester, RI; occupation: Heavy Equipment Operator employed by Metals Recycling; d/o/b: 6/17/1959; William A. Rushworth, III; address: 65 Shore Drive, Johnston, RI; occupation: Mechanic/Heavy Equipment Operator, Metals Recycling; d/o/b: 11/16/1956; his sisters: Susan Ann Jutras; address: Rocky Hill Road, Scituate, RI; occupation: employed part-time by the Scituate School Department as a teacher's aide; d/o/b: July 3, 1955 and Deborah Ellen Rushworth; address: 65 Shore Drive, Johnston, RI; occupation: disabled but employed on a part-time basis by the Cranston School Department in the Cafeteria; d/o/b: 8/12/1963.

Interrogatory No. 2: Please identify the plaintiff's decedent's complete educational background, technical license background, employment history (for the last ten years), including the name and address of each of the plaintiff's decedent's employers and a general description of the plaintiff's decedent's duties at each identified place of employment.

**Answer**: Todd had completed the 9th grade having attended Johnston Public Schools. For a period of ten years prior to his death, he was employed at Metals Recycling. He had a crane operator's license and worked at the company initially when he started in the early 1980's on a "road crew" and then began to work as a crane operator, which was his position for a number of years prior to his death. His operator's license was active for a number of years and was at the time of his death.

Interrogatory No. 3: Please identify by name and address, each and every person known or believed to be a witness to the accident referred to in the plaintiff's complaint and every person known or believed to have any derivative knowledge of the accident referred to in the plaintiff's complaint. With reference thereto, please provide reasonable particularization of the information possessed by each such person having such actual or derivative knowledge.

**Answer**: Upon information and belief, at the time of this incident there were no employees of Metals Recycling present at the scene except for Todd Brian Rushworth. There was a stevedore there and the occupants of the ship. I do not, at this time, know of any other eye witnesses to the accident itself.

Interrogatory No. 4: State whether you have knowledge of any photographs, motion pictures, video or any other pictorial or graphic representation of the scene of the accident of the plaintiff's decedent, any of the participants in the accident, the alleged product which was being used at the time and to each, state:

a. The scene or scenes depicted;
b. The date taken;
c. The name and address of the photographer; and
d. The name and address of the person having present custody of each.

**Answer**: (a-d) No video of the scene was taken to the best of my knowledge. Photographs may have been taken by the police and/or rescue crew in attendance at the scene. I took pictures the next day and copies of these photographs are being provided under separate cover in this lawsuit.

Interrogatory No. 5: State whether you or your agents have knowledge of any statement, reports, voice recording, or other transcriptions of any kind given by you or other witnesses or individuals having knowledge concerning the incident which is the subject matter of this complaint; and if so, with respect to each, identify the name and address of the person giving it, the date taken, the name and address of the person taking it, and the name and address of the person having present custody of it.

**Answer**: I do not know of any such transcriptions, voice recordings, etc., other than any police investigation which would be part of the police report and the OSHA investigation.

Interrogatory No. 6: Please state exactly and in detail how plaintiff claims the alleged accident occurred involving the plaintiff's decedent, giving all of the events in the order of their occurrence.

**Answer**: Todd was operating the crane in question. At one point, while loading, the boom of the crane buckled, causing the load to snap back and strike directly into the cab where he was sitting. The injuries sustained as a direct result of this crash from the load resulted in his death.

Interrogatory No. 7: Please itemize all personal expenses of Todd Brian Rushworth for five years prior to his death for, inter alia, room, rent, mortgage payments, real property tax payments, electricity, telephone, water bills, home owner's insurance, automobile ownership maintenance repair insurance and personal property taxes, food, medical and dental expenses, travel expenses, vacation expenses, clothing expenses, union dues, spending money technical dues, professional dues, personal loans, debts due and owing to any other person, firm, or corporation, alimony payments, support payments, state and federal income taxes, and any other personal expenses incurred or on behalf of Todd Brian Rushworth, of any nature.

**Answer**: At the time of his death, Todd owned his home at the above-referenced address which property had a mortgage. He was unmarried and had no children and as such paid no alimony or child support. He was employed on a full-time basis by Metals Recycling and was not employed elsewhere. He was earning $16.78 per hour at the time of his death, plus overtime and ship loading differential which resulted in an hourly rate in the area of $20.00 to $22.00. His annual earnings with deductions for federal and state taxes will be provided through records from the employer so as to supplement this response along with further information concerning his average monthly/annual expenses.

Interrogatory No. 8: State whether you have consulted, engaged or otherwise obtained the assistance of any expert with respect to any of the issues in this case, and if so, as to each such expert, state:

a. His name, home address, business address and occupation;
b. His educational background including schools, colleges, universities attended, and as to each, the certificate or degree thereof;
c. The field of his expertise and a description of the license or licenses with respect thereto, including the period of his license and the name of the issuing officer or agency;
d. The name and address of each professional society or organization of which he is a member;
e. The subject matter upon which he is expected to testify, to include the substance of the facts, opinions and/or conclusions to which the person is expected to testify, and a summary of the grounds for each opinion, and

f. A description and date of each written report prepared by him to include the name and address of the person having present custody or control of each such report.

**Answer**: At this time no expert has been retained or engaged. The individuals conducting the OSHA investigation have expertise with respect to the issues presented.

Interrogatory No. 9: State if you or any other person on your behalf engaged in any communication with the defendant, Manitowoc Cranes, Inc., (or their employees) whether that communication was oral or written relating to matters set forth in the complaint; state the date of such communication, the identity of all persons present, exactly what was said by you or such other person and exactly what was stated by the defendant, the date of all written communication, the name of the author, and whether there exist any documents summarizing the substance of the communication and, if so, the identity of the party having present custody of such document.

**Answer**: No.

Interrogatory No. 10: If the plaintiff or anyone acting on his behalf allege that the defendant Manitowoc Cranes, Inc., or anyone acting on its behalf has ever made any statement which plaintiff claims to be an admission of liability or responsibility, then with reference thereto, please state with reasonable particularity the name and address of the person or persons to whom the statement was made, the name and address of the person or persons who overhead each such identified statement, the exact time, date and place of the statements and the substance of each of the statements made.

**Answer**: No.

Interrogatory No. 11: Please state whether any person, firm or corporation has made any inspection or tests of the product referred to in plaintiff's complaint for the purpose of determining the alleged defects referred to in plaintiff's complaint or for the purpose of determining the alleged breaches of warranty, and if so, as to each such inspection or test please state the following:

a. The name and address of each person, firm or corporation who or which performed each inspection and/or test;
b. If each was performed by a firm or corporation, state the exact name, address and occupation of the person of each such firm or corporation who performed each such inspection and/or test;
c. The approximate date of each such inspection and/or test;
d. The exact nature or description of each such inspection and/or test by describing the step by step procedure or procedures of each such inspection and/or test on each such occasion;
e. The name and address of each person, firm or corporation known or believed by you to have present custody or control of any report, report or memoranda of each such inspection and/or test; and
f. A description of the substance of each such records, report or memoranda.

**Answer**: None other than the OSHA inspection.

Interrogatory No. 12:

a. Please state all the facts upon which plaintiff relies in alleging that defendant, Manitowoc Cranes, Inc., failed to use due care in the design, manufacture, and sale of the product referred to in the plaintiff's complaint, and with reference thereto, please state exactly what plaintiff claims that defendant Manitowoc Cranes, Inc., should have done in order to exercise due care in connection with the above, all as referred to in the plaintiff's complaint;

b. Please state all the facts upon which plaintiff relies in alleging that the defendant Manitowoc Cranes, Inc. negligently failed to warn plaintiff's decedent of the alleged dangerous or defective condition of the crane of which it knew or should have known and with reference thereto, please identify;

(1) The dangerous and defective condition as alleged, that plaintiff claims existed in the crane at all relevant times; and

(2) Exactly what alleged (a) dangerous or (b) defective conditions which plaintiff claims Manitowoc Cranes, Inc. was aware including reasonable particularization of the nature and time of its awareness and with further reference thereto, please state exactly what plaintiff claims Manitowoc Cranes, Inc. should have done in order to exercise due care in connection with the above all as referred to in the plaintiff's complaint.

**Answer**: (a) Without waiving the right to rely upon further facts as may be ascertained and/or developed, the Defendant had legal duties with respect to the design, manufacture, sale and transmittal of this hazardous equipment. Upon information and belief, said Defendant participated in a reconfiguration of the crane with respect to the location of the cab which was originally low and was raised to a higher location where it was placed at the time this incident occurred, i.e., approximately 30 feet above. The Defendant knew or should have known that this reconfiguration and cab location adjustment created a significantly greater risk to the operator and required, therefore, a heightened need for the calibration of load weight and crane angle. The reconfigured crane should have been OSHA approved and otherwise in conformance with standards in the industry and suitable for its intended use.

(b) As set forth above the Defendant had direct involvement with the reconfiguration of the cab location on the crane and in the exercise of due care, knew or should have known, the intended use and the heightened risk of harm to the operator that this new reconfiguration caused.

Further facts and information will be provided as obtained through the course of discovery.

Interrogatory No. 13: Please state exactly what warnings the plaintiff claims should have been made to include the exact wording of the warnings, the size of the warnings, the type of the warning to be made, the color and size of the letters and where exactly the warnings should have been placed.

**Answer**: Without waiving the right to rely upon further facts as may be ascertained and/or developed through the course of discovery, upon information and belief,

there were no warnings provided to the operator concerning the risk posed by this reconfiguration. Load measuring devices with shut-off ability and/or warning signal to the operator regarding an overload should have been installed.

Interrogatory No. 14: Please state precisely and in detail all of the facts upon which plaintiff relies in his allegation that the product referred to in the plaintiff's complaint was defective in design and manufacture, and with reference thereto, please state in detail as to each:

a. In what and exact particular respect or respects the plaintiff claims that the product was defective;
b. An itemization of each and every part, portion, component or section of the entire product which plaintiff claims was or were defective;
c. An itemization and particularization of each defect for each part, portion, component or section which plaintiff claims existed at the time of manufacture and up to and including the accident referred to in the plaintiff's complaint; and
d. The manner in which each defect manifested itself.

**<u>Answer</u>**: As set forth above, the cab location of this crane as reconfigured represented a hazard to the operator thereof. See OSHA investigation report and conclusions for further information currently available concerning the crane.

Interrogatory No. 15: Please identify with reasonable particularity what plaintiff claims the alleged alternative design should have been in connection with the design of the alleged product referred to in the plaintiff's complaint providing all design drawings of the alternative design, all materials specifications and general specifications and general specifications of the alternative design, all test documents pertaining to the testing of the alternative design either in prototype or final form including test protocols, test films, test reports, and test results, and with further reference thereto, please reasonably particularize exactly what design features of plaintiff proposed alternative design plaintiff claims would have prevented the accident referred to in the plaintiff's complaint and which would have prevented or lessened the injuries sustained by the plaintiff's decedent as alleged in the plaintiff's complaint, and reasonably particularize how this result would have been attained by the use/inclusion of plaintiff's proposed alternative design.

**<u>Answer</u>**: The Defendant has the information with respect to the original design of the product which had the low cab placement. As set forth above, upon information and belief, the Defendant has information concerning the reconfiguration or alternative design which altered this. Further information concerning the specifics referred to in this Interrogatory would be within the knowledge and/or possession of the Defendant, the Lessor, Salah and Pecci and/or the decedent's employer, Metals Recycling. Had the cab not been located at the height that it was at the time of this incident, its occupant would not have been in a location for direct contact as he was and injuries from such an incident would not have been fatal.

Interrogatory No. 16: Please describe in detail the nature, extent and exact location of the injuries claimed to have been sustained by the plaintiff's decedent Todd Brian Rushworth as a result of the alleged accident referred to in the plaintiff's complaint.

**Answer**: The force of the load swinging into the cab which Todd was occupying caused him to sustain severe and life-threatening injuries. He was attended to by emergency medical professionals at the scene. He was essentially trapped in the cab while rescue personnel attempted to free him. He was transported to the Rhode Island Hospital for an official death pronouncement.

Interrogatory No. 17: Please give an itemized statement of the expenses, if any, incurred by anyone for plaintiff's decedent Todd Brian Rushworth for medicines, medical services, doctors, treatment, hospitals and hospitalization, nurses, x-rays, and funeral and related expenses, the date or dates when each was rendered or supplied and the charge for each.

**Answer**: Anderson Winfield Funeral Home: $5,273.15; Highland Memorial Park: Burial: $1,652.00.

Interrogatory No. 18: Other than the institution of this lawsuit, have you or your attorneys or representatives made a claim, oral or written, against any person, entity in connection with this occurrence? If the response is in the affirmative, state as to each such claim:

a. Whether it was made in writing or orally and who made such claim on your behalf;
b. The name, address and name of the organization, if any insurance carrier, upon whom such claim was made;
c. The date of each such claim;
d. The name and address of the recipient of each such notice of claim;
e. The name and address of the person or persons having custody of originals or copies of any of the documents or releases referred to in your response to subdivision (d) of this interrogatory and please attach a copy of said release or releases to these answers to interrogatories; and
f. Please state the total sum you or your attorneys or representatives have thus far received in settlement or compromise of claims or potential claims arising out of the accident described in the complaint.

**Answer**: (a-f) In addition to this lawsuit, see *William A. Rushworth, Sr., Individually and His Capacity of the Estate of Todd Brian Rushworh v. Salah and Pecci Leasing Company, Inc., et als*, U.S. District Court, District of Rhode Island, C. A. 06-0369. Metals Recycling, LLC had workers' compensation liability.

Interrogatory No. 19: With regard to the ownership and chain of custody and/or possession of the crane referred to in the plaintiff's complaint, please state the following:

a. The name and address, occupation and business address of each person, firm or corporation who or which has ever owned the crane referred to in plaintiff's complaint, up to and including the present;
b. The date of each such purchase or sale;
c. If the crane referred to in the plaintiff's complaint was taken from the scene of the accident, please state the following:

    1. Exactly where the crane was first taken;

2. Where the crane referred to in the plaintiff's complaint was and has been stored, to date, giving the names, addresses and telephone numbers of the persons who have or had control of the crane and the premises where the crane referred to in the plaintiff's complaint was and has been stored and the inclusive dates of such storage, to date;
3. The exact location where the crane referred to in the plaintiff's complaint and all of its components parts, portions or sections, are now located, to include the street, the street number and the name of the person, firm or corporation who or which has custody of each, and the city and state where the crane is located; and with reference thereto, please state the date that the crane was first brought to said location and the name, address and location of the person, firm or corporation who or which brought the crane to said location;
4. The name and address of the person, firm or corporation who or which has present custody or control of each and every part, portion, component, or section of the entire crane which plaintiff alleges was defective; and with reference thereto, please state exactly how said person came into possession of each part, portion or component or section, to include the name and address of the person who delivered each to said person receiving delivery.

Answer: The crane was leased from Salah and Pecci to Metals Recycling, LLC. From the time of its lease by said employer, it was located where it was intended to be used and always used, i.e., the Port of Providence.. The details concerning its chain of custody and/or its possession from the date of manufacture to its lease by Metals Recycling, LLC are known to parties other than myself and further specifics concerning same will be ascertained through the course of discovery. See OSHA investigative report for information concerning the final disposition of the crane in question.

Interrogatory No. 20: State whether the plaintiff's decedent suffered, for a period of five years preceding the present date, from any health condition requiring medical treatment, and if so:

a. The nature of the health conditions; and
b. The name and address of all persons and institutions which rendered treatment therefore, the nature of the treatment and the encompassing dates of such treatment.

Answer: Todd was in good general health and suffered from no diseases or other conditions which required medicine or treatment.

Interrogatory No. 21: State whether the plaintiff's decedent has sustained at any time any other accident or accidents involving a personal injury for the period of five years preceding the present date, and if so, as to each such accident:

a. The date, place and nature of such accident;
b. The nature of the injury or injuries sustained therein;

c. The name and address of all persons and institutions which rendered treatment to the plaintiff's decedent for said injuries;
d. The name and address of the person or persons, if any, against whom the plaintiff's decedent made a claim for damages, if any, as a result of said accident;
e. The name of the court in which the plaintiff's decedent commenced legal action, if any, for damages as a result of said accident.

**Answer**: The only other known accident involving personal injury for the last five years of Todd's life occurred during the course of his employment within the year prior to his death (about seven to eight months prior) when he was running a hydraulic shear and crushed a tank which contained a liquid which he believed was water but was acetylene. The pressure of the liquids release forced the cab window back into his face, striking it. This caused injury to his nose and cut the skin there and across his eyebrows. He was treated at the Rhode Island Hospital and released. He was out of work for a short period of time as a result of this incident. No lawsuits were involved and expenses were covered through workers' compensation benefits.

Interrogatory No. 22: State the descriptive title of the position or job of the plaintiff's decedent at the time of the alleged injuries, the name and address of plaintiff's decedent's employer and the amount of his average weekly wages or earnings for the period commencing three months prior to the alleged injury and ending on the date of the alleged injury.

**Answer**: Todd's employer was Metals Recycling, LLC, and he was a crane operator. In 2001 his gross annual income was approximately $58,500.00; in 2002 it was approximately $47,000.00. In 2003 his gross earnings to the time of his death were $27,570.48.

Interrogatory No. 23: Please give an itemized statement of the sums of money, if any, alleged to have been lost by reason of the plaintiff's decedent's estate by reason of the death of decedent Todd Brian Rushworth, including an identification of the following:

a. The gross amount of the plaintiff's decedent's prospective income or earnings over the remainder of his identified life expectancy including all estimated income he would have earned by his own exertions both physical and mental;
b. The identification of all of the plaintiff's decedent's estimated personal expenses that he would probably have incurred for himself, exclusive of any of his dependents over the course of his identified life expectancy including the payment of income taxes;
c. The discount rate to be applied to determining the present value of the loss of the estate and identification of all economic trends projected purchasing power of money, inflation, benefits allegedly lost and the projected increase or decrease in the cost of living;
d. Plaintiff's decedent's identified work life expectancy and a particularization of whether the above calculations apply to plaintiff's decedent's life expectancy or work life expectancy and the factual basis for the claim for either.

**Answer**: This information requires expert calculations and said information will be supplied through expert testimony and this response supplemented upon its availability.

Interrogatory No. 24: State in time sequence everything that the plaintiff's decedent did on the product with reference to the operation of the crane and state exactly how the crane responded for five (5) minutes prior to the accident referred to in the plaintiff's complaint, including all actions which the plaintiff's decedent made with his hands or feet or other parts of the body in connection with the operation of the crane.

**Answer**: Given that the crane operator died as a result of the injuries sustained in the incident, it cannot be stated with direct knowledge what precisely he did for the five minutes prior to the accident with specificity requested. It is stated that Todd was an experienced crane operator at the time of this incident and was in the process of working the crane in the usual course at the time that the accident occurred.

Interrogatory No. 25: Please state whether you or anyone acting in your behalf has interviewed or conversed with any agents, servants, or employees of this defendant in this matter concerning the incident, the events prior or subsequent thereto or about any of the matters contained in the plaintiff's complaint or the defendant's answer, and if so, as to each, please state:

a. The name or other means of establishing the identity of the agency, servant or employee of this defendant;
b. The name, address and relationship to you or any person who was party to such interview or conversation;
c. Whether the interview or conversation was by telephone or in person;
d. The name or other means of establishing the identity of each person who overheard any portion of the interview or conversation;
e. The date and place where each took place;
f. Specific subject(s) or topic(s) discussed;
g. The substance of each and every statement made on each occasion as outlined above.

**Answer**: No.

Interrogatory No. 26: Please state precisely where, when and by what means William A. Rushworth, Sr. became aware of the incident in question.

**Answer**: At about 10:00 o'clock or 10:30 in the evening while I was at home with my wife and my other son, James, I received a telephone call from Richard DaSilva of Metals Recycling who informed me that there had been an accident with the crane while my son, Todd, was operating it. I and James immediately went straight to the work site. When I arrived, the Fire Department and rescue personnel were on scene. I was there at least two hours when one of the Fire Crew Chiefs informed me that my son, Todd, expired.

Interrogatory No. 27: State in detail all facts upon which plaintiff relies in claiming that William A. Rushworth, Sr. is entitled to recover for negligent infliction of emotional distress.

**Answer**: As set forth in the above response, when I arrived at the scene, officials and rescue personnel were attending to my son, trapped in the cab of the crane which had tipped. I had to stand by knowing that my son was seriously injured, frightened, fighting for his life and in severe pain. I was present at the scene and observing this but was unable to personally help, touch, comfort or talk to my son. It is difficult if not impossible to accurately describe the anguish I felt while there witnessing the horror of my son's final hours. When I was told that Todd had died, I then collected myself as best I could to go home and tell his mother what had happened. This type of family tragedy involves emotional trauma and the physical components involved are less noticeable. There were and are many sleepless nights. My primary care physician at the time, James Cardy, M.D., of Cranston, Rhode Island gave me an anti-depressant to assist. I was only able to take it for 2 to 3 days as it had side effects.

Interrogatory No. 28: Set forth all medical care and treatment rendered to William A. Rushworth, Sr. as a result of the incident alleged in plaintiff's complaint.

**Answer**: See answer to number 27 above.

Interrogatory No. 29: Set forth all facts upon which plaintiff relies in claiming he is entitled to punitive damages.

**Answer**: The Defendant, as manufacturer of the crane in question, breached multiple duties of care in terms of the design and, more particularly, the reconfiguration of this crane with respect to the location of the cab. The risk of serious and fatal injury to the ultimate user of this heavy equipment was known or should have been known by the Defendant. Despite this knowledge, direct or imputable, the Defendant failed to make the product safe for its intended use and/or allowed it to be used when there was a strong likelihood of injury to the operator. This failure to exercise reasonable care in the design and/or reconfiguration resulted in the death of the operator. The negligence and disregard of this Defendant for the hazards of its product to the ultimate user constitutes gross negligence and/or wantonness of such an extreme nature as to amount to criminality which for the good of society and as a warning to individuals ought to be punished.

Interrogatory No. 30: State whether the crane referred to in plaintiff's complaint has ever been changed, altered or modified in any way, at any time up to the present and, if so, please state for each of the following:

a. The date of each such change, alteration or modification;
b. The nature of each, to include a step-by-step description of exactly what was done on each occasion or alteration or modification;
c. The name and address of the person, firm or corporation who or which requested the change, alteration or modification and the name and address of the person, firm or corporation who or which performed the change, alteration or modification on the crane, or on any of its components or parts; and
d. The reason for each.

**Answer**: Yes. As set forth in the above responses, the crane was modified particularly with respect to the location of the cab and the specifics concerning this are known to the Defendant and the Lessor and/or Metals Recycling, LLC. Further information concerning the specifics requested will be obtained through the course of discovery.

William A. Rushworth, Sr.

State of Rhode Island
County of Providence

Subscribed and sworn to before me this 5th day of February, 2007.

Notary Public
Print Name: CAROL A. ZANGARI

As to Objections:

*Law Offices of Carol A. Zangari*

Carol A. Zangari (#2130)
The Wilcox Building
42 Weybosset Street, Suite 402
Providence, RI 02903
401.831.1999 (t)
401.454.8309 (f)
Dated: February 5, 2007

**CERTIFICATION**

I hereby certify that on the 5th day of February, 2007, a true copy of the above-entitled *Plaintiff's Answers to Defendant's Interrogatories* were faxed and mailed to: **John F. Kelleher, Esq.,** *Higgins, Cavanagh & Cooney, LLP*, The Hay Building, 4th Floor, 123 Dyer Street, Providence, RI 02903.

Diane Sell

*Law Offices of Carol A. Zangari*