# In The Matter Of:

*WILLIAM A. RUSHWORTH, SR. VS*
*MANITOWOC ENGINEERING CO., ET AL*

---

*THOMAS C. SALAH*
*Vol. 2*
*April 21, 2008*

---

*Reporting Associates*
*10 Dorrance Street, Suite 617*
*Providence, RI 02903*
*401-351-1660*
*401-351-1665-fax*

Original File Salah2.txt
**Min-U-Script® with Word Index**

Page 162

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

WILLIAM A. RUSHWORTH, SR., Individually and in his capacity as Administrator of the Estate of TODD BRIAN RUSHWORTH

vs. C.A. NO. 06-364T

MANITOWOC ENGINEERING CO.
THE MANITOWOC COMPANY, INC.

WILLIAM A. RUSHWORTH, SR., Individually and in his capacity as Administrator of the Estate of TODD BRIAN RUSHWORTH,

Plaintiff

vs. C.A. NO. 06-369T

SALAH & PECCI LEASING COMPANY, INC., SALAH & PECCI, a/k/a JOHN DOE CORP.,

Defendant

vs.

METALS RECYCLING, LLC, MANITOWIC CRANES, INC., INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL #1329, JOHN LOPES, in his capacity as President of Local #1329; HORACE CASTLE, in his capacity as Secretary-Treasurer of Local #1329; and JOHN DOES 1-5,

Third-Party Defendants

CONTINUED DEPOSITION OF THOMAS C. SALAH, a Witness in the above-entitled cause, taken on behalf of the Plaintiff, before Jeanne M.S. Derham, RMR, Approved Reporter in and for the State of Rhode Island, at the Law Offices of Carol A. Zangari, 42 Weybosset Street, Providence, Rhode Island on April 21, 2008, at 9:37 a.m.

REPORTING ASSOCIATES

Page 163

APPEARANCES:

Law Offices of Carol A. Zangari
BY: CAROL A. ZANGARI, ESQ.
Counsel for the Plaintiff

Higgins, Cavanagh & Cooney
BY: JOHN F. KELLEHER, ESQ.
SAMUEL C. BODURTHA, ESQ.
Counsel for Defendant Manitowoc Engineering Co. and The Manitowoc Company, Inc.

Foley Hoag LLP
BY: JEFFREY S. FOLLETT, ESQ.
Counsel for Defendant Salah & Pecci Leasing Company, Inc. and the Witness

Rice, Dolan & Kershaw
BY: MARK P. DOLAN, ESQ.
STANLEY F. PUPECKI, ESQ.
- AND -
McKenney, Quigley, Clarkin & Izzo
BY: ROBERT J. QUIGLEY, JR., ESQ.
Counsel for Defendant Metals Recycling, LLC

REPORTING ASSOCIATES

Page 164

INDEX


| DEPOSITION OF THOMAS C. SALAH | PAGE |
|---|---|
| EXAMINATION BY MS. ZANGARI | 165 |
| EXAMINATION BY MR. DOLAN | 218 |
| EXAMINATION BY MR. KELLEHER | 238 |
| FURTHER EXAMINATION BY MR. DOLAN | 241 |
| FURTHER EXAMINATION BY MS. ZANGARI | 250 |
| EXAMINATION BY MR. FOLLETT | 258 |
| FURTHER EXAMINATION BY MR. DOLAN | 259 |


EXHIBITS


| NO. | PLAINTIFF'S FOR IDENTIFICATION | PAGE |
|---|---|---|
| 2 | Crane Inspection Evaluation | 180 |
| 3 | Certificate of Inspection | 192 |
| 4 | Field Repair Report | 204 |
| 5 | Letter of January 10, 2003 | 207 |
| 6 | Field Repair Report | 211 |

| NO. | DEFENDANT'S FOR IDENTIFICATION | PAGE |
|---|---|---|
| A | Two-page proposal | 243 |
| B | First page of proposal with some handwritten entries | 248 |


REPORTING ASSOCIATES

165

THOMAS SALAH, first having been duly sworn, testified as follows:

CONTINUED EXAMINATION BY MS. ZANGARI:

Q. Mr. Salah, we're reconvening. I have a few more questions for you. I represent the Plaintiff. You may recall that I gave you instructions concerning how the deposition would proceed when we were here earlier. Let me just once again say I don't expect this to take very long. If during the course of it, you require a break, please let us know and we'll be sure to accommodate you; fair enough?
A. Thank you.
Q. Your attorney is here with you and from time to time he may interpose an objection. You are still required to answer the question irrespective of that unless your counsel instructs you otherwise; okay?
A. Thank you.
MR. FOLLETT: Carol, were there stipulations on the record last time?
MS. ZANGARI: I don't recall us doing that. In terms of objections as to form or substance, there were none.

240

Page 0

says note say for Salah & Pecci only?
A. No.
Q. Taking a look at Exhibit Three, I think you've identified that as a certificate that was filled out by Salah & Pecci; correct?
A. That's correct.
Q. You said that's some type of special material?
A. Yes.
Q. If it is altered you can see that it's altered; is that right?
A. That's correct.
Q. Why is that?
A. Well, I've been told that some people like to move them from machine to machine.
Q. Is that sticker required on cranes?
A. No, not by OSHA, no.
Q. So is that something that's strictly for Salah & Pecci's use?
A. No. Many different companies use it. We had the option to put them on or not. It is just easier for a safety person to look to see the machine's annual inspection was good through a certain date.
Q. If an OSHA inspector came by a place, they

241

wouldn't have to get into the crane, they could just look up and see the inspection was performed?
A. That's correct.
Q. And the annual inspection, why did Salah & Pecci perform annual inspections on the M-250 that was at Metals Recycling?
A. Because by law you have to do them once a year.
Q. All right. It's an OSHA regulation, I guess?
A. That's correct.
Q. Now, what color are the Certificates of Inspection that are applied?
A. Almost like a silver paper color, aluminum color.
Q. Do you know whether the color of the paper is something that's required by OSHA?
A. Not to my knowledge.
MR. KELLEHER: That's it. Thank you.
MR. BODURTHA: I have no questions.
MR. DOLAN: I have a couple of follow-up questions.
FURTHER EXAMINATION BY MR. DOLAN:
Q. Not to beat a dead horse, but here's the

242

Pa

question for you. You mentioned the replacement crane and I'm unsure. You believe there was a load moment indicator on the replacement crane, that there wasn't a load moment indicator or you simply have no knowledge?
A. I don't recall. I believe at one time I said there was. I don't recall if there was or there wasn't.
Q. Before the replacement crane was delivered, did you learn that federal regulation required a load moment indicator in this application?
A. I don't recall.
Q. Did you ever discuss whether or not the replacement crane would have a load moment indicator with anyone from Metals Recycling?
A. No.
Q. I'm going to show you a two-page document that was marked as an exhibit to a complaint that Salah & Pecci filed I believe in the State Court of Massachusetts relating to the property damage to the crane.
A. Uh-hmm.

244

Q. There are some handwriting on the second page of the document.
A. Uh-hmm.
Q. Do you see that?
A. That's correct.
Q. Do you know who wrote that?
A. Someone in Metals.
Q. And there's no doubt but that this handwriting that I just referred to on the second page of the document was on the document at the time it was received from Metals Recycling signed?
A. That's correct, sir.
Q. Was this document signed at the meeting that you referred to?
A. No, it was not, sir.
Q. Sent in the mail and then returned in the mail?
A. I don't recall whether it was mail or fax.
Q. Sent by either mail or fax and received by mail or fax in return?
A. Yes, sir.
Q. Do you know who signed it on behalf of Metals Recycling?
A. No, I can't --

245 Page 0

Q. If you know.
A. No, I don't.
Q. Was it received back by mail or fax before the crane was delivered?
A. I'm not sure.
Q. In any event, whatever changes were made to the document were accepted by Salah & Pecci; correct?
MR. FOLLETT: Objection.
A. No.
Q. Did Salah & Pecci ever notify anyone at Metals Recycling that any changes to the document were not acceptable to Salah & Pecci?
A. Yes.
Q. By how?
A. Telephone.
Q. Did you call somebody?
A. Yes.
Q. Who did you call?
A. Bill Huling.
Q. When did you call him?
A. I don't remember what date, sir.
Q. How about what month?
A. I don't know what month, sir.

246

Q. How about what year?
A. Sir, on or about the time the machine would go there.
Q. How about the year, do you recall the year?
A. No, I don't, sir.
Q. So you faxed or mailed the contract; is that correct?
A. That's correct.
Q. And you received a version back by mail or fax?
A. That's correct.
Q. And there were changes to it?
A. That's correct.
Q. And did you make this phone call to Mr. Huling within days of the receipt of the document back signed?
A. I would think so, yes.
Q. Is that your best recollection?
A. That's my best recollection.
Q. What did you say to Mr. Huling?
A. That I don't know what you're crossing off there.
Q. What did he say to you?
A. I don't recall what he said.
Q. Did you say anything else to him?

247 Page 0

A. I'm sure there was just small talk but I don't recall.
Q. Have you told me everything you can recall having been said during this telephone discussion?
A. Yes, sir.
Q. Did you ever follow up that telephone discussion with any writings?
A. No.
Q. Now, this document I'll represent to you was appended as Exhibit A to a complaint that Salah & Pecci caused to be filed as -- strike that. This document was appended as Exhibit A to a complaint that Salah & Pecci caused to be filed in Massachusetts Superior Court seeking recovery for property damage to this crane. You're aware of that fact?
A. Uh-hmm.
Q. Is that a yes?
A. Yes.
Q. And it was represented in that complaint in an allegation filed on behalf of Salah & Pecci in court that this two-page document was representative of the agreement entered into with Metals Recycling for the rental of

248

the crane. Was that allegation set forth in that complaint true?
A. Yes.
Q. I'm going to show you another document that we'll mark as Defendant's B. It's another version of the first page of that contract with handwriting on it. Do you see that?
A. Yes.
(Equipment Proposal with some handwritten entries was received in evidence as Defendant's Exhibit B for identification.)
Q. Have you ever seen that before today?
A. No, I can't say -- wait a minute. I say no but my writing is on there.
Q. Okay. Up in the upper right-hand corner says start rental 12/12/00 and trucking?
A. That's correct.
Q. That's your handwriting?
A. Yes. It looks like it.
Q. Do you remember receiving a first page of this two-page contract back from Metals Recycling with a handwritten change made by Mr. Huling and initialed by him?
A. No, I don't, sir.
Q. You don't deny receiving that, though;

273 Page 0

indemnification provision in the standard form agreement meant?
A. Yes.
Q. What was your understanding of it?
A. My understanding was it was for a bare rental so when the machine went to you, you were in charge of all taxes, any and all damages, all insurances, all maintenance of the machine.
Q. Anything else?
A. That's it, sir.
Q. What you just told us was the sum and substance of what you understood the standard form indemnification provision to have meant in the standard form contract; correct?
MR. FOLLETT: Objection.
A. Yes, sir.
MR. DOLAN: Can I talk to you just a minute?
(Recess held.)
MR. DOLAN: That is all I have.
MR. QUIGLEY: I have nothing.
(Whereupon, the deposition concluded at 12:21 p.m.)

274

STATE OF RHODE ISLAND SUPERIOR COURT
PROVIDENCE, SC.

I hereby certify that I am expressly approved as a person qualified and authorized to take depositions pursuant to the Rules of Civil Procedure of the Superior Court, especially, but without restriction thereto, under Rule 30 (e) of said Rules; that the witness was first sworn by me; that the transcript contains a true record of the proceedings.

I further certify that the deponent did not request a review of the transcript.

IN WITNESS WHEREOF, I have hereunto set my hand this twenty-fourth day of April, 2008.

______________________________
JEANNE M. DERHAM, RMR

SALAH & PECCI LEASING CO., INC.
CRAWLER CRANE RENTAL - 50 TO 300 TON

100 Hudson Road, Canton, Mass. 02021-1407
Tel. (781) 828-5210 Fax (781) 828-7601
www.salah-pecci.com

December 5, 2000

Metals Recycling L.L.C.
89 Celia Street
Johnstown, Rhode Island 02919

Attention: Mr. Anthony Izzo

EQUIPMENT PROPOSAL

| | |
|---|---|
| LESSEE:<br>COMPANY ADDRESS: | Metals Recycling, L.L.C.<br>89 Celia Street<br>Johnstown, Rhode Island 02919 |
| BILLING ADDRESS: | Same |
| PHONE: (401) 831-7799 | FAX: (401) 331-9854 |
| PROJECT: | Loading of Ships |
| SITE LOCATION: | Providence, Rhode Island |
| PROPOSED EQUIPMENT: | Manitowoc M-250, S-II with 160' Boom and with High Cab |
| TERM OF RENTAL: | Minimum One Month |
| RENTAL TO COMMENCE: | Middle of December, 2000 |
| RENTAL RATE: | $25,000.00 Per Month<br>$ 7,500.00 Trucking Cost to Site<br>$ 7,500.00 Trucking Cost from Site<br>$ 5,000.00 To Erect High Cab<br>$ 75.00 Per Hour, Erection Supervisor<br>*** Mileage to be Paid by Lessee<br>***All Premium Time to be Paid by Lessee<br>***Assist Machine by Others |

DEFENDANT'S EXHIBIT A 4-21-08

(ALL INVOICE PAYMENTS ARE DUE WITHIN 30 DAYS OF INVOICE DATE, OTHERWISE AN INTEREST CHARGE OF 1 ½ % PER MONTH WILL BE CHARGED.)

THIS PROPOSAL IS SUBJECT TO AVAILABILITY AND VALID FOR 15 DAYS, IT CONTAINS TWO PAGES.

p. 1 Exhibit A

# SALAH & PECCI LEASING CO., INC.

CRAWLER CRANE RENTAL - 50 TO 300 TON

100 Hudson Road, Canton, Mass. 02021-1407
Tel. (781) 828-8210 Fax (781) 828-7601
www.salah-pecci.com

December 5, 2000
Metals Recycling LLC M-250

RENTAL CLARIFICATIONS:

INSURANCE: INSURANCES INCLUDING: A. WORKMENS COMPENSATION B. EMPLOYERS LIABILITY COMPREHENSIVE GENERAL LIABILITY WITH SALAH & PECCI NAMED AS AN ADDITIONAL INSURED. ALL RISK CONTRACTORS EQUIPMENT INCLUDING COLLAPSE AND OVERLOAD INSURANCE SHALL BE PROVIDED BY THE LESSEE, PLEASE FORWARD CERTIFICATE: $2,000,000.00

TAXES: ALL TAXES, DUTYS AND TARIFFS ARE THE RESPONSIBILITY OF THE LESSEE AND ARE NOT INCLUDED IN THE RATES INDICATED. (or 17% have for a 1 month lease)

OPERATION: RATE INDICATED IS BASED ON AN ABSOLUTE BARE RENTAL ONLY.

OVERTIME: RATE INDICATED IS BASED UPON USE OF 40 HOURS PER WEEK OPERATION. OVERTIME RATE WILL BE CHARGED AT ONE-HALF THE PRO-RATED RATE.

OTHER: LESSEE AGREES TO MAINTAIN EQUIPMENT IN A MANNER SATISFACTORY TO LESSOR. THE LESSOR WILL HAVE THE OPTION TO REMOVE SAID EQUIPMENT FROM SITE IF THIS REQUIREMENT IS NOT MET.

LESSOR ASSUMES NO LIABILITY FOR LOSS OF DOWNTIME OR DAMAGES ON ACCOUNT OF ACCIDENTS, DELAYS DUE TO DEFECTIVE MATERIAL, MOTOR OR ENGINE TROUBLES, OR DELAYS IN THE DELIVERY OR REMOVAL OF EQUIPMENT. LESSEE TO INDEMNIFY LESSOR FOR ALL LOSSES, DAMAGES, EXPENSES AND PENALTIES ARISING FROM ANY ACTION ON ACCOUNT OF PERSONAL INJURY OR DAMAGE TO PROPERTY OCCASIONED BY THE OPERATION, HANDLING OR ON SITE TRANSPORTATION [redacted] DURING THE RENTAL PERIOD AND THAT THE LESSOR SHALL BE SAVED HARMLESS FROM ALL COURT ACTIONS AND ALL CLAIMS FOR INJURIES TO PERSONS OR PROPERTY OCCASIONED THROUGH THE USE OF THIS EQUIPMENT WHILE IN YOUR POSSESSION.

LESSEE SHALL KEEP WRITTEN MAINTENANCE INFORMATION FOR LESSORS EQUIPMENT RECORDS.

VERY TRULY YOURS
SALAH & PECCI LEASING CO., INC.

SIGNATURE OF ACCEPTANCE    12/7/00 DATE

p.2
Exhibit A